Shaw, C. J.
Seldom has the court been called upon to put a construction upon a will of so peculiar a character as that on which the present case depends. It attempts to make a donation to a municipal corporation, with a view of promoting an object substantially common and general to all; and yet to exclude certain persons named, and their descendants, from all participation in its benefits, for one hundred years. Several questions arise, which it is necessary to consider, all of which *17 depend upon the construction of the will of Joseph Houghton; and it will be necessary to cite all those parts of it, which can have any bearing upon those questions. [Here the chief justice read that part of the will set forth, ante., 12, 13, 14.]
The first material question is, who were the legatees and devisees under this will? Were the legacy and devise to the inhabitants in their corporate capacity, excluding a certain number named; or were they to individuals, in their natural capacities ? The testator seems to have supposed, that he could give land and money to a part of the inhabitants, by a special designation, and exclude others. It is perhaps possible so to frame a donation of money or personal property, as to vest it in all the inhabitants of a town or other territorial district, excluding certain persons named. It might be possible, though extremely difficult, to ascertain all the inhabitants; then, by excepting those named, there might be a sufficient descriptio personarían to enable them to take aliquot parts, in their natural capacities. But were such a course admissible in any case, it would not be applicable in this. If such a right of property once took effect, and vested in the donees individually, it would not be devested, though they should cease to be inhabitants the next day. The gift, in the present case, is not only to those who are actual inhabitants, when the will is made, or at the decease of the testator, but to all those who may become inhabitants of a growing town, during the next hundred years. Such a transmission of property, either real or personal, cannot be effected by will; it is contrary to the rules of law. It is manifest, we think, that it was the expectation of the testator, that the property should be taken and held by the inhabitants of Bolton, present and future, and go to them in succession. This could not be done, treating the will as a donation to individuals to take and hold in their individual capacities. The property, on that theory, so far as it was real, must go to them and their respective heirs, in fee; and so far as it was personal, would be absolute in the first taker.
But whatever vague notion the testator may have had, about giving to a part of the inhabitants; taking the whole will together, as we must, to ascertain the meaning of anyone *18 clause, we think it quite manifest that the property was to vest in the town, as a corporation. The first clause, designating a part of the inhabitants, if it stood alone, might lead to a contrary conclusion. But it is controlled by other clauses, showing that the donee was the town. The money is to be paid by the executors to the town, within two years. The town is to lend the money, to be secured by a mortgage. A mortgage to whom ? To the town, a body politic, capable of taking a mortgage to itself? Or to many hundreds, perhaps thousands, of inhabitants? Again; the interest is to be a perpetual fund to support a school in the centre of the town, where such instruction is to be given as the town shall decide to be most useful. If the town shall fail to fulfil the conditions, the gift is to be forfeited to the heirs of the testator.
There is nothing peculiar in the devise of real estate; it is only of a lot for the school-house, incidental to the principal gift, and to be forfeited if the land shall be used for another purpose after two years. Now, if the money is to be forfeited on the failure of the town to comply with the conditions, the holding or forfeiture of the land must depend upon the act or failure of the town. We think it very clear, that it was not the intent of the testator, to give the property to one set of persons, to hold in trust for the benefit of another; because the donees and the beneficiaries, who are to have the advantage of the school to be established, are described and designated in the same terms. Taking the whole will together, then, notwithstanding the formal words of gift are to a part of the inhabitants of Bolton, described afterwards to be all the inhabitants of the town, with the exception of nine persons named, and their descendants, for one hundred years, after which the school should be for the benefit of all the inhabitants,— which is the true designation of the town as a corporation,—we are of opinion that the gift was to the town, in its corporate capacity, with an intent, for a limited time, to exclude certain persons and families, both from taking the gifts and from enjoying the benefits. This was the view taken of it by the town, who accepted the gifts, received the money, and proceeded to establish the school.
*19 Then supposing these gifts of personal and real estate are to the town as a corporation, excepting therefrom nine inhabitants by name, and their descendants, for the support of a school for all the inhabitants, except the nine mentioned and their descendants, is such a will valid ? Can it be carried into effect according to its terms ? If it cannot, shall it be judicially held that the will, in this respect, is wholly inoperative and void; or how otherwise shall it be construed ? We have no doubt that a municipal corporation, a town, in Massachusetts, is competent to take and hold real and personal estate in its corporate capacity, for the promotion and advancement of any of the purposes, for which these corporations are established ; not only those for which such town may raise and assess money on the inhabitants by taxation, but to analogous purposes, or those of like kind; such as are for the common convenience and accommodation of the inhabitants, though not required by law. Vidal v. Girard, 2 Howard, 128. And it has been held, in this commonwealth, that, as one of the great functions of a town is to maintain and support schools, their power in this respect is not limited to the schools specially required by law to be supported, but they may voluntarily raise money to support schools of a higher character, and where education is carried to a higher degree than in the common town schools. Cushing v. Newburyport, 10 Met. 508.
These gifts, therefore, were valid, so far as the power of the town of Bolton to take and hold is concerned, and so far as the purpose is to support a school, under the authority and direction of the town, for the common benefit; and the objection lies in the attempted exclusion of some of the inhabitants. If the force of the objection lay in the difficulty, not to say the impracticability, of carrying it into execution, it would be certainly very great. Taking nine inhabitants, already, for aught that appears, at mature life, and taking the average number of those who may live to be married, and the average number of children to a marriage, it is hardly too much to say, that at the expiration of a hundred years, they would form a large proportion of the inhabitants. Then is to be con *20 sidered the difficulty, after four or five generations, of ascertaining, when a child is offered for the school, whether one of his remote ancestors, through either a male or female, was not a Sawyer, a Fry, or a Jewett, and if so, whether a descendant of one of the proscribed individuals. But formidable as this objection is, it does not form the ground upon which we decide. The court are of opinion, that this part of the will is inoperative and void, and cannot be carried into effect; because it is repugnant to the nature of the grant; in violation of the fundamental principles of equality, upon which the rights and privileges, as well as the duties and burdens, of citizens of towns are regulated; contrary to good morals and public policy.
Equality in burdens and in privileges is the great regulating principle of these bodies, without which they run into infinite confusion, and tend to the grossest injustice. Should any question arise in regard to the title to this property, suits must be prosecuted or defended by the town; the expenses would be a charge upon the treasury of the town, and so upon the tax-paying inhabitants, including those who are excluded from all benefit in the property. Should a person in early life marry a wife, a descendant of one of the excluded persons, and have children, then lose his wife, marry another and have other children, the children of the same family, in going to school, must separate at the dividing point, one set being allowed to go to the privileged high school, whilst the others must be content to go to the inferior common school. The effect would be to impose unequal duties, and to grant unequal privileges, to those who stand, in the eye of the law, on a footing of entire equality. Were the only alternative, between holding that this part of the will must be carried into effect, or declared wholly void, we should be strongly inclined to hold it void. But we think the case does not present that alternative. It is a valid grant to the town, for a purpose within the scope of their authority. The object of the testator was to establish a public school, ultimately for all the town. But for a term of one hundred years, the children of certain inhabitants ar? excluded. What the motive of the *21 testator was does not appear; and perhaps it would not be profitable to inquire. But this intent, whatever it is founded on, was secondary to the main purpose of establishing a public school, strictly and properly a town • school. Then the restriction, being repugnant to the nature of the grant, and contrary to law and public policy, is itself inoperative and void, and leaves the grant to the town as a grant for all the inhabitants, as if no such exclusion had been inserted.

Writ of mandamus grcmted.